CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
12/2/2020
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
    DEPUTY CLERK

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | |
|---|---|
| TREMAYNE A. POWELL, | Case No. 6:19-cv-80 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| BISCUITVILLE INC., | JUDGE NORMAN K. MOON |
| *Defendant.* | |

Plaintiff, Tremayne Powell, and Defendant, Biscuitville, both filed motions for summary judgment in this case. Dkts. 27, 37. Powell asserts a retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") and seeks statutory damages and damages for loss of income and loss of future income. Dkt. 2. Biscuitville claims that Powell was fired for cause on account of misconduct which preceded any protected activity on the part of Powell. The Court grants Biscuitville's motion and denies Powell's motion because there is no genuine dispute of material fact that would support Powell's claim or preclude the award of summary judgment to Biscuitville.

    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

Powell started working at Biscuitville Store #151 in Lynchburg, Virginia on January 31, 2019. Dkt. 38 ¶ 2. Biscuitville is a quick-casual restaurant chain with locations across North Carolina and Virginia. *See* Dkt. 37-7 at 1. Prior to beginning his shift on January 31, 2019, Powell attended an orientation from Biscuitville outlining the behavior expected of employees. Dkt. 48 at 12. The orientation was conducted by Jessica Scott, the store manager. Dkt. 38 ¶ 3. During the

1

orientation, Powell electronically signed Biscuitville's "Team Member Expectations" form. Dkt. 37-8. Biscuitville's form clearly outlines that an expectation of employees is to "follow all company policies and procedures" while also "respect[ing] management and adher[ing] to their leadership directions." *Id.* Biscuitville's Employee Handbook provides more detail regarding "unacceptable conduct" that may result in disciplinary action . Dkt. 37-7 at 9–10. Specifically, the Handbook lists "the abuse or inconsiderate treatment of employees or inability to cooperate with coworkers … the use of profane, abusive or threatening language to coworkers … [the] causing of false alarm or panic in the work place … causing or contributing to unsanitary work conditions" as example of unacceptable conduct which could result in termination. *Id.*

Powell returned for his first full working shift on February 1, 2019, where he was assigned to the store's cooking station. Dkt. 38 ¶ 5. Throughout the day Scott checked in on Powell, who seemed to be on edge and frustrated, either with the work, the people, or the restrictions of the job. *See* Dkt. 38 ¶ 6. Team members reported to Scott that Powell was "behaving strangely and cursing." *Id.* After attempting to check in, Powell stated that if she "ke[pt] asking [him] if [he was] okay it's going to be a problem." *Id.* ¶ 7. He was disgruntled over the fact that he was not permitted a drinking cup in the kitchen, which Biscuitville did not allow because of health code reasons. *Id.* ¶ 5. Soon after, Scott asked Powell to take the weekend off and return the following week. *Id.* ¶ 8. Before Scott left work, she requested that coworkers of Powell provide written reports of his behavior that day, in case involvement with Biscuitville's Human Resource Department would be necessary down the line. *Id.* ¶ 8.

On Tuesday, February 5, 2019, Powell returned to Biscuitville for another work shift. *Id.* ¶ 9. Again, he appeared disgruntled and had multiple confrontations with the assistant store manager. *Id.* The main issue was Powell's perception that he was being treated unequally when it

came to cups in the cooking area and the use of a cell phone while he was on the clock. *Id.* In his Complaint, Powell alleges that "there were at least four cups … in the kitchen area … [and] he witnessed several employees drink from those exact cups on that same day … without any reprimand." Dkt. 2 ¶ 15. He also claims that he was "reprimanded for only removing his cell phone from his pocket to glance at the time when [he witnessed] other employees playing music and using their cell phones without any reprimand." *Id.* ¶ 14. That same day, Powell stated in front of multiple co-workers that he would "blow the f-ing building up." Dkt. 37-3. Consistent with Biscuitville's policies surrounding threats of violence, Powell was sent home by the manager on duty due to insubordination and misconduct. Dkt. 38 ¶ 9. Scott determined that Biscuitville's Human Resources, known as "People Excellence," should be involved based on Powell's erratic behavior. Dkt. 37-2.

The next day, after being sent home for threatening the safety of his colleagues, Powell submitted an internal complaint to Biscuitville at TellBVL@Biscuitville.com. Dkts. 38 ¶ 11, 48-1(U). The email complaint stated that he made a filing with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination. Dkt. 48-1(U). It was followed by a second email on the same day updating Biscuitville that a retaliation claim would be filed. Dkt. 48-1(U). On the morning of February 7, 2019, Powell notified Scott and Carlson, in writing, that he submitted a written complaint to Biscuitville. Dkt. 48-1(J). Powell was subsequently told that he could not work until Scott heard from Biscuitville's People Excellence group. Dkt. 48-1 at 5–6. At that time, Powell had not filed any complaint with the EEOC, but did so on February 20, 2019. Dkt. 48-1(T).

Powell was contacted on February 8, 2019 by a People Excellence representative, Nakeisha Thorpe. Dkt. 37-10 at 67–68. Thorpe informed Powell that Biscuitville would investigate the circumstances surrounding the internal complaint. *Id.* People Excellence reviewed the complaint,

along with Powell's employment history, the incidents in question, the alleged workplace discrimination, and his on-the-job behavior. Dkt. 38 ¶ 13. Such efforts consisted of collecting and reviewing written statements of Biscuitville #151's employees. *Id.* The investigation took place between February 8 and February 21, 2019. Following the investigation, People Excellence found that Powell made threats of violence, demonstrated belligerent behavior, caused others to fear for their safety, and refused to follow directives from store management. Dkts. 37-2; 37-4. Accordingly, People Excellence concluded that on February 6, management properly sent Powell home for non-negotiable conduct, not alleged discrimination, for which they found no support. Dkt. 37-4.

On February 21, 2019, Brenda Long, Biscuitville's Area Coach for Store #151, notified Powell, by phone, that he was being terminated for his workplace conduct. Dkt. 37-5. The reasons for Powell's firing were outlined in the Performance Coaching Action Form signed by Long on or about February 28, 2019. *Id.*

The EEOC issued, and Biscuitville received, a Notice of a Charge of Discrimination based on Powell's complaint on March 1, 2019. Dkt. 38 ¶ 16. On August 28, 2019, the EEOC issued Powell a right to sue letter. Dkt. 48-1(T).

## II. LEGAL STANDARD

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal

Rules of Civil Procedure." *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 354 (4th Cir. 2011). Indeed, cross-motions for summary judgment demand that the Court consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

Taking up a defendant's motion for summary judgment first, a plaintiff must show that there is a genuine issue of material fact to prevail — plaintiff must produce enough evidence to rebut the defendant's evidence purporting to show that no genuine dispute of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Mere allegations, denials, speculation, or conjecture are not adequate to satisfy the burden of production demanded by summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 327 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

Moreover, when a pro se litigant is before the Court, he is not relieved of his obligation to submit affirmative evidence in opposition to a summary judgment motion. *Hayes v. Lynchburg City Sch. Bd.*, No. 6-13-CV-00008, 2014 WL 901213, at *1–2 (W.D. Va. Mar. 7, 2014), *aff'd*, 583 F. App'x 270 (4th Cir. 2014) ("[E]vidence submitted by a pro se plaintiff may still be . . . disregarded when it is not credible, or when it is largely inadmissible. A party may not rest on speculation, hearsay, or opinion to demonstrate a genuine dispute of material fact. . . . Rather, the party asserting that a fact cannot be or is genuinely disputed must support the assertion by [providing support within the scope of Rule 56(c)].") (citing *Celotex*, 477 U.S. at 33034).

### III.   DISCUSSION

Powell alleges a Title VII retaliation claim against Biscuitville and asserts that Biscuitville "retaliated against [him] because he engaged in activity protected under Title VII," by presumably filing a discrimination complaint with the EEOC. Dkt. 2. As a preliminary matter, in order to

prevail on this count, Powell must show retaliation through direct evidence or through the *McDonnell Douglas* burden-shifting framework. *Foster v. Univ. Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015).

Direct evidence requires a direct nexus between the alleged discriminatory conduct and the adverse employment action. *Warch v. Ohio Cas. Ins.*, 435 F.3d 510, 520 (4th Cir. 2006). Circumstantial evidence demands a different inquiry under the *McDonnell-Douglas* analysis. *Foster*, 787 F.3d at 250. Under such a structure, the plaintiff must establish a prima facie case of retaliation by proving (1) that plaintiff "engaged in protected activity," (2) that plaintiff's employer "took adverse action against" him, and (3) "that a causal relationship existed between the protected activity and the adverse employment activity." *Id.* If such a showing is made, the burden then shifts to the defendant to show that the alleged retaliation was "the result of a legitimate non-retaliatory reason." *Id.* Finally, the burden shifts back to the plaintiff who has an opportunity to rebut the employer's evidence by putting forth evidence that the employer's nonretaliatory reasons were pretextual. *Id.* It should be noted that the Fourth Circuit has held that an employee need not show "that [his] protected activities were but-for causes of the adverse action" at the prima facie stage. *Strothers v. City of Laurel*, 895 F.3d 317, 334 (4th Cir. 2018) (citing *Foster*, at 251 (holding that but-for causation in a Title VII retaliation case must be shown only at pretext stage of *McDonnell Douglas* burden-shifting framework)).

In determining whether the defendant employer took the adverse action because the plaintiff employee engaged in a protected activity, courts first look to whether the allegedly retaliatory actor knew that the plaintiff had engaged in the protected activity at the time of the allegedly retaliatory act, and then consider any temporal proximity between the protected activity and the allegedly retaliatory act. *See Baqir v. Principi*, 434 F.3d 733, 748 (4th Cir. 2006) (holding

6

that a plaintiff had not established a prima facie case of retaliation where he had not shown that the allegedly retaliatory actors were aware of his protected activity); *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir.1998) (determining that a lengthy period of time between the employer becoming aware of the protected activity and the alleged adverse employment action negated any inference that a causal connection existed).

When the alleged adverse action takes place soon after the employer becomes aware of the protected activity, the plaintiff can make out a prima facie causal link. *See Laing v. Fed. Express Corp.*, 703 F.3d 713, 720 (4th Cir. 2013); *Williams v. Cerberonics*, 871 F.2d 452, 457 (4th Cir. 1989).

Powell attempts to put forth a prima facie case of retaliation. He alleges that he engaged in a protected activity when he complained about the discriminatory treatment he faced with respect to unequal treatment in the use of cups in the kitchen and the use of a cell phone while working. Indeed, there is no question that Powell did in fact complain, both to Biscuitville and the EEOC, and that his complaints constituted protected activity. While it is evident that Powell complained of discrimination, nowhere in his Biscuitville complaint did he allege specific discriminatory conduct on account of race, sex, or age. Instead, he relied on conclusory statements without showing unequal treatment based on a protected characteristic. His complaint to Biscuitville states that he was "denied the equal treatment and respect given to *other employees* in the workplace while on the job" when the manager berated him for having his phone out and using cups in the kitchen. Dkt. 48-1(K) (emphasis added).

Powell's EEOC complaint does state a single fact alleging unequal treatment. His claim stated that he was yelled at for having a cup in the kitchen, while "another [female] African American employee (Dark Complexion) was drinking from a cup… and was not yelled at."

7

Dkt. 48-1(T). His filing indicated a belief that he was treated differently than the female employee on account of his lighter complexion, the fact that he is male, and because he was 41 years' old. *Id.*

Notwithstanding the substance of the complaints, Powell says that Biscuitville took adverse action against him when he was asked to leave work and when he was terminated. The adverse action, he contends, was due to the fact that he made complaints to People Excellence and the EEOC. Supporting his argument, Powell points to the face that he arrived at Biscuitville on February 7, 2019 and was told he could not work until Scott heard from People Excellence. He asks the Court to infer that, because the internal complaint had been filed the day before, he was prevented from working in retaliation to his filing. He also contends that an inference of retaliation also applies to the EEOC complaint because the EEOC complaint was filed on February 20 and he was terminated on February 21. Taken together, Powell asserts that he has stated a prima facie case for retaliation.

Assuming that Powell does state a prima facie case of retaliation, Biscuitville has still put forward enough uncontradicted and material evidence to rebut the claim and prevail as a matter of law. Biscuitville successfully shows that the alleged retaliation was "the result of a legitimate non-retaliatory reason." *Foster*, 787 F.3d at 250. Case law suggests that an honest belief that an employee has violated workplace policies or rules is sufficient to establish a non-pretextual basis for terminating employment. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 220 (4th Cir. 2007) ("Title VII endeavors to eliminate workplace discrimination, but the statute was not designed to strip employers of discretion when making legitimate, necessary personnel decisions, such as the decision to terminate an employee when an investigation determines that employee made physical threats against a supervisor."); *Bizzel v. Sprint/United Management Co.*, 2014 WL

1232335 (W.D. Va. Mar. 25, 2014) (finding no pretext where a number of plaintiff's coworkers had complained about her routine use of profanity in the workplace).

As Biscuitville notes, "an employee may not insulate [himself] from termination by covering [himself] with the cloak of Title VII's opposition protections *after* committing non-protected conduct that was the basis for the decision to terminate." *Curay-Cramer v. Ursuline Academy of Wilmington, DE Inc.*, 450 F.3d 130, 137 (3d Cir. 2006) (collecting cases); *see also Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 358 (2013) (finding a that a permissive standard for Title VII claims could contribute to the filing of frivolous claims by an employee who knows he or she is about to be fired).

During his short stint as an employee with Biscuitville, Powell cursed loudly, violated company policy surrounding health code violations, threatened the safety of other employees, and even demanded the names of those who reported him. Uncontroverted evidence establishes each of those facts. Biscuitville clearly had multiple, legitimate, non-discriminatory and non-retaliatory reasons for terminating his employment—constituting threatening and erratic behavior which put the livelihood of his employees at risk. Dkts. 38, 37-2, 37-4, 37-3.

Biscuitville also outlines the investigative steps it took to review all the circumstances of Powell's employment with store #151. Dkt. 38 at 14. People Excellence, as per standard investigation practice, collected statements from the parties who witnessed the event or experienced any alleged events involving discrimination, threats of violence, or any other problematic conduct. Dkt. 37-4 ¶ 6. In addition, People Excellence spoke with restaurant employees and reviewed Powell's workplace misconduct issues. Dkt. 37-5 ¶ 7. Biscuitville concluded that Powell's discrimination allegations lacked merit, and that he should be terminated due to his erratic, threatening, and bizarre behavior. *Id.* at 15; *see* Dkt. 37-4.

Under *McDonnell-Douglas*, Powell may attempt to rebut Biscuitville's rationale with evidence that the employer's nonretaliatory reasons were pretextual. However, Powell failed to present any admissible evidence to rebut Biscuitville's contentions, or to bolster his own. Powell gives no reason to question the credence of the evidence put forward by Biscuitville, showing that he threatened the safety of other employees. *See Hayes*, 2014 WL 901213, at *9–10. Indeed, each statement provided to People Excellence corroborates Scott's telling of the events. There is nothing in the record to suggest that there is a reason why People Excellence should not believe that Powell made the threats.

Stated differently, Powell does not provide evidence that Biscuitville fired him for pretextual reasons. His use of exhibits is illusory at best, often citing to additional evidence only to say that there are statements within the documents that may appear contradictory, or in his view are "incoherent." *See* Dkt. 48 at 7, 8, 9, 10, 11, 12, 15, 17, 18, 19, 20, 21, 22. None of the evidence he relies on rebuts Biscuitville's legitimate reasons for his termination. While there is *some* dispute as to the events, they are not genuine issues of material fact. Instead, Powell's statements are speculation and conjecture. Consequently, as to Biscuitville's motion, the Court finds that no reasonable juror could find for Powell in this case, as there is no genuine dispute of material fact. Powell fails to present evidence to show a prima facie case of retaliation, while Biscuitville offers overwhelming evidence showing that any adverse employment action was warranted and not pretextual.

With respect to Powell's motion, the Court finds that there is no basis for an award of summary judgment. Dkt. 27. Powell's motion argues that as a matter of law, there is sufficient evidence to establish that Biscuitville violated his rights under Title VII. *Id.* Even assuming that Powell's evidence does present a prima facie case of retaliation, Powell does not rebut

10

Biscuitville's evidence showing that his termination was not retaliatory. Biscuitville demonstrated that Powell was fired for legitimate and non-pretextual reasons. Dkt. 37–4. Because Biscuitville submitted uncontroverted material evidence which Powell did not rebut, this Court finds that no reasonable juror could find for Powell in this case. Therefore, Powell cannot prevail on his motion for summary judgment.

## IV.     CONCLUSION

Taken in totality, Powell filed a suit for retaliation without sufficient evidence to support his contentions and demonstrate that a genuine dispute of material fact exists. Instead, Powell makes denial after denial without any support. For the foregoing reasons, the Court will award summary judgment to Biscuitville and deny Powell's motion. An accompanying order shall issue.

Entered this 2nd day of December, 2020.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE